## Case No. 2,716.

### The CHUSAN.

[1 Spr. 39.]¹

District Court, D. Massachusetts. Dec., 1842.²

LIEN ON FOREIGN VESSEL FOR SUPPLIES—WAIVER —STATE STATUTE.

1. Vessels belonging to one state when in the ports of another, are deemed so far foreign that a lien for necessary supplies is given by the general maritime law.

[Cited in The E. A. Barnard, 2 Fed. 722.]

¹ [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

² [Reversed in Case No. 2,717.]

2. The statute of New York was not intended to impair such liens; and if it were so intended, it would be nugatory. Such liens are beyond the reach of state legislation.

3. Taking the negotiable note of one of the owners, on time, is a waiver of such lien, upon the authority of The Nestor [Case No. 10,126].

[In admiralty. Libel by J. & G. Ring against the Massachusetts barque Chusan for supplies furnished in the port of New York; Broughton & Cushing, claimants.]

Mr. King, for libellants.

F. C. Loring, for claimants.

SPRAGUE, District Judge. This is a libel against a vessel owned in Massachusetts, promoted by material men, who furnished necessary supplies to her while in the port of New York. There is no question that vessels belonging to one state, when in the ports of another, are deemed to be so far foreign that a lien for necessary supplies is created by the general maritime law. The General Smith, 4 Wheat. [17 U. S.] 438.

But it is contended that such lien has been prevented or defeated. In the first place it is said, that by a statute of New York (2 Rev. St. 493), all such liens are terminated when the vessel leaves the state. To this there are two answers; first, that the statute was not intended to impair liens arising under the general maritime law; and second, that if it were so intended, it would in that respect have been nugatory. Such liens are beyond the reach of state legislation. The courts of the United States will enforce them to their full extent, notwithstanding any attempt to abrogate or limit them, by local legislation.

The second objection is far more formidable. It appears that the supplies were furnished upon a credit of six months, and were charged by the libellants to the barque Chusan and owners. A negotiable note, signed by one Broughton, a part owner, was subsequently taken by the libellants, and a receipt signed by them was given therefor at the foot of the bill, as follows: "Received from N. Broughton, his note at six months, from September 3d, for the above amount." The note was negotiated by the libellants, and was not in their possession at maturity. Not being paid by Broughton, they took it up as indorsers, and it is now offered to be surrendered.

It is contended that the taking of the note was, under the circumstances, a waiver of the lien. This objection I sustain solely upon the authority of the opinion given by Mr. Justice Story in the case of The Nestor [supra]. In that case, speaking of a negotiable note given by the owner, on time, he says "that the receiving of such a note is direct proof that credit is given to the personal responsibility of the owner, and presumptive proof that no credit is given to the ship; or, in other words, that there is a waiver of any lien on the ship."

The circuit court for this district having a

right to revise the decrees of this court, I think it proper that so strong and direct an opinion, deliberately given and promulgated by that tribunal, should govern the present case, although such opinion was not necessarily called for by the point decided. Libel dismissed.

Harris v. The Kensington [Case No. 6,122]; 1 Pars. Mar. Law. 492, note 3. See, also, Page v. Mackey [Case No. 10,663]; Bristowe v. Whitmore, 35 Law T. 175; Page v. Hubbard [Case No. 10,663]; Moore v. Newbury [Id. 9,-772].

[NOTE. Libellants appealed to the circuit court, where the decree of the district court was reversed, and a decree entered for libellants. See Case No. 2,717, next following.]

